IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: COLOPLAST CORP.
PELVIC SUPPORT SYSTEM
PRODUCTS LIABILITY LITIGATION MDL No. 2387

---

THIS DOCUMENT RELATES TO:

*Donna Rollings v. Mentor Worldwide LLC, et al.*     Civil Action No. 2:15-cv-09660

MEMORANDUM OPINION & ORDER

Pending before the court is Defendant's Motion to Dismiss for Failure to Prosecute [ECF No. 20] filed by Mentor Worldwide LLC ("Mentor"). Plaintiff's counsel has responded [ECF No. 22], and Mentor has replied [ECF No. 23]. Thus, this matter is ripe for my review. For the reasons stated below, Mentor's Motion is **GRANTED in part** to the extent that it seeks dismissal, but **DENIED** to the extent that it seeks dismissal with prejudice.

I.    Background

The case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are nearly 25,000 cases currently pending, approximately 150 of which are in the Coloplast MDL, MDL 2387.

In an effort to efficiently and effectively manage this MDL, the court decided to conduct pretrial discovery and motions practice on an individualized basis so that

once a case is trial-ready (that is, after the court has ruled on all summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, the court placed this and other cases in Coloplast Wave 3. Pretrial Order ("PTO") # 123, at 14 [ECF No. 7].

Managing multidistrict litigation requires the court to streamline certain litigation procedures in order to improve efficiency for the parties and the court. Some of these management techniques simplify the parties' discovery responsibilities. For example, PTO # 132 required plaintiffs to submit specific causation expert disclosures by September 5, 2017, and set the close-of-discovery deadline for November 4, 2017. The plaintiff failed to comply with these deadlines. On this basis, Mentor now seeks dismissal with prejudice.

## II. Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (stating that a court "may issue further just orders" when a party "fails to obey an order to provide or permit discovery"). Before levying a harsh sanction under Rule 37, such as dismissal or default, a court must first consider the following four factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, containing thousands of individual cases in the aggregate, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." *Id.* at 1232. And a "willingness to resort to

sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

III. Discussion

PTO # 132 required Coloplast plaintiffs to submit specific causation expert disclosures by September 5, 2017, and set the close-of-discovery deadline for November 4, 2017. According to Mentor, the plaintiff failed to respond to requests for written discovery. Additionally, Mentor attempted to contact the plaintiff at least six times to request dates for her deposition, but received no response. Mentor noticed the plaintiff's deposition for September 15, 2017, but it was postponed based on the parties' agreement. On October 6, 2017, Mentor served an Amended Notice of Deposition of Plaintiff for October 17, 2017. On October 11, 2017, plaintiff's counsel informed Mentor that they would be attending the deposition telephonically. On October 17, 2017, the plaintiff failed to attend her deposition. Mem. Supp. Def.'s Mot. to Dismiss 2 [ECF No. 21]. Accordingly, Mentor seeks dismissal with prejudice and an award of reasonable costs and attorney fees.

In response to the Motion, plaintiff's counsel states that the cause of the plaintiff's failure to appear for her deposition is counsel's inability to obtain any

4

response or cooperation from its client. Under these circumstances, plaintiff's counsel argues that dismissal without prejudice would be a more appropriate sanction.

Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that dismissal without prejudice and an award of reasonable expenses are appropriate in this case.

The first factor, bad faith, is difficult to ascertain, given that plaintiff's counsel has not had recent contact with the plaintiff. However, counsel's inability to contact the plaintiff is not an excuse and instead indicates a failing on the part of the plaintiff, who has an obligation to provide counsel with any information needed to prosecute her case. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[A] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit."). Furthermore, as set forth in PTO # 2, "[a]ll attorneys representing parties to this litigation . . . bear the responsibility to represent their individual client or clients." PTO # 2, at ¶ E [ECF No. 10], *In re Coloplast Corp., Pelvic Support Sys. Prods. Liab. Litig.*, No. 2:12-md-02387. This includes awareness of and good faith attempts at compliance with all PTOs and other court orders. The plaintiff nevertheless failed to comply with PTO # 132. Although these failures do not appear to be callous, the fact that they were blatant and in full knowledge of the court's orders and discovery deadlines leads me to weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this

is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor—prejudice caused by noncompliance—also leans toward the order of sanctions. The purpose of depositions and orderly pretrial discovery in general is to permit the parties and the court to resolve matters in a just, speedy, and inexpensive manner. By depriving Mentor of the plaintiff's deposition testimony, the plaintiff is depriving Mentor of the information it needs to mount its defense. Furthermore, because Mentor has had to divert attention away from responsive plaintiffs and onto this case, the delay has unfairly impacted the progress of the remaining plaintiffs in MDL 2387.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

Application of the first three factors demonstrates that this court would be justified in dismissing the plaintiff's case. And, given the plaintiff's apparent desertion of her case, imposing any lesser sanction would likely be futile. Thus, in consideration of the fourth factor—the effectiveness of less drastic sanctions—I find

6

that less drastic sanctions are not adequate. The plaintiff's failure to cooperate with, or even respond to, her counsel, coupled with her failure to comply with discovery deadlines, demonstrate a complete lack of interest in prosecuting her case. Under these circumstances, lesser sanctions are not appropriate.

Additionally, Mentor's Motion is **GRANTED** to the extent that it seeks the payment of reasonable expenses. I find that $500 is a minimally representative valuation of the defendant's expenses. This number accounts for the time and money the defendant spent attempting to contact the plaintiff to request dates for her deposition; scheduling and rescheduling the deposition; assessing the effect of her discovery violations; drafting a motion for sanctions; and serving the motion. All knowledgeable MDL counsel would consider these efforts, which would have been avoided had the plaintiff complied with the court's order, to be worth $500, at the least.

IV. Conclusion

It is **ORDERED** that Defendant's Motion to Dismiss for Failure to Prosecute [ECF No. 20] is **GRANTED in part** to the extent that it seeks dismissal and an award of reasonable expenses, but **DENIED** to the extent that it seeks dismissal with prejudice. Defendant Mentor Worldwide LLC is **DISMISSED without prejudice**. It is further **ORDERED** that the plaintiff has **until January 22, 2018** to pay Mentor **$500** as minimal partial compensation for the reasonable expenses caused by the plaintiff's failure to comply with discovery.[1] In the event that the plaintiff does not provide

---

[1] The court directs Mentor to communicate with plaintiffs' leadership regarding payment instructions.

7

adequate or timely payment, the court will consider ordering a show-cause hearing in Charleston, West Virginia, upon motion by the defendant.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 22, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE